UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JESSE N. MCCAULEY,

                       Plaintiff,

v.                                                       Case No. 24-cv-1009-pp

SARAH RANSBOTTOM, *et al.*,

                       Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 5) AND SCREENING AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A**

---

Plaintiff Jesse N. McCauley, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. On August 23, 2024, the court received the plaintiff's request to amend his complaint, dkt. no. 9, and his proposed amended complaint, dkt. no. 10. Because the court has not yet screened the complaint, this decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee and for appointment of counsel, dkt. nos. 2, 5, and screens his amended complaint.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 19, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $23.29. Dkt. No. 8. The court received that fee on September 4, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names as defendants Correctional Officer Sarah Ransbottom, Sergeant Michael Zepka and Captain Kyle Tritt, all of whom work at Waupun. Dkt. No. 10 at 1–2. The plaintiff alleges that he started working with Ransbottom in September 2023 as a tier tender, which means he passed out food, supplies and ice and cleaned the tier. Id. at 3. Tier tenders required

an officer escort because Waupun was on lockdown. Id. The plaintiff alleges that Ransbottom "was getting into it with plenty [of] inmates starting in October 2023," and that she "coerced and forced [the plaintiff] into having her back" and protecting her from other incarcerated persons. Id. at 3–4. The plaintiff explains that Ransbottom coerced him by providing him "drugs, pills that [were] prescribed to her," canteen items taken from other incarcerated persons, "personal conversations, pictures of her and her family, threats and unwanted sexual contact." Id. at 4. He alleges that Ransbottom forced him into protecting her from other incarcerated persons, reminding him that if he "ha[d] her back, she [would] have [his] back and [would] always protect [him] from security." Id.

The plaintiff alleges that Ransbottom also "tried to have [him] help her retaliate against a supervisor who had placed her on an investigation." Id. at 4–5. He says things "went as far as speaking about shooting the supervisor house up [*sic*]." Id. at 5. He says Ransbottom first forced him into unwanted sexual contact on December 3, 2023, "by placing her arms around [him] and kissing [him] on the lips." Id. She allegedly told him "how she felt so safe working with [him] and she appreciated [him]." Id. The plaintiff says Ransbottom forced this unwanted affection three or four more times through February 2024. Id. He says that on one occasion, Ransbottom "grabbed and squeezed [his] penis, while she kissed [him]." Id. She allegedly told him she found "a 'blind spot'" where the cameras would not see this conduct. Id. She allegedly threatened the

4

plaintiff not to say anything or he would "lose her as a friend" and lose his job, and Ransbottom said that she "[would] deny everything." Id.

The plaintiff alleges that in February 2024, Ransbottom told him that "she was low on money and needed [his] help." Id. The plaintiff says he "took a cellphone from somebody and told Ransbottom" he would sell it and "give her the money." Id. But "someone" told a supervisor that the plaintiff had a cellphone, and "the Captain" came and handcuffed the plaintiff while he was working and took the cellphone. Id. The plaintiff alleges that he "was placed in the hole" and told "the security Captain . . . everything Ransbottom forced [him] to do." Id. He says he has had to see a psychologist to "get [Ransbottom] out [of his] head." Id. at 5–6.

The plaintiff claims that Ransbottom was deliberately indifferent to his health and safety by coercing him into unwanted sexual encounters and forcing him to protect her from other incarcerated persons. Id. at 6. He also claims that she created a hostile working environment and inflicted emotional distress "by having explicit conversations with him and by showing him explicit photographs." Id.

The plaintiff claims that Sergeant Zepka was Ransbottom's supervisor. Id. at 7. He says that Zepka "failed to act when he was made aware by other inmates that [the plaintiff] and Ransbottom may be having sexual intercourse and doing other illegal activities." Id. He alleges that Zepka abetted Ransbottom's illegal conduct by keeping a different tier tender "in his cell, to eventually firing him, so she can work with [the plaintiff] permanently." Id. The

plaintiff claims that Captain Tritt supervised Ransbottom and the plaintiff and that Tritt "failed to act when he was made aware by other inmates and correctional officers that [the plaintiff] and Ransbottom may be having sexual intercourse and doing other illegal activities." Id. He alleges that Zepka and Tritt "could have prevented" Ransbottom's conduct "and stopped [the plaintiff] from going to the hole and losing his job." Id. at 8.

The plaintiff seeks unspecified compensatory and punitive damages. Id. at 9. He also asks the court to expunge his disciplinary record. Id.

C. Analysis

The court reviews the plaintiff's allegations of sexual harassment and abuse under the Eight Amendment, which protects prisoners from cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive or unwanted force, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298, 303). "An unwanted touching . . . intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012). Conduct by prison officials, other than touching, when done "in a

6
Case 2:24-cv-01009-PP     Filed 10/17/24     Page 6 of 15     Document 11

harassing manner intended to humiliate and inflict psychological pain," may violate the Eighth Amendment. Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003); see also Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.").

The amended complaint alleges that Ransbottom used her position of authority as a correctional officer to force the plaintiff to protect her from other incarcerated persons and accept her unwanted and undesired physical and sexual advances. The plaintiff alleges that this conduct went on for two to three months and involved unwanted kissing and touching of his penis. Ransbottom allegedly used drugs, canteen items, favorable treatment and threats to force the plaintiff to participate in the unwanted conduct. The court finds these allegations sufficient to state an Eighth Amendment claim against Ransbottom.

The plaintiff also seeks to proceed against Ransbottom on a state law claim of intentional infliction of emotional distress. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). There is no federal claim for intentional infliction of emotional distress. But this claim may be raised under state law. Because the facts underlying the plaintiff's claim of intentional infliction of emotional distress are the same as those underlying his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law claim.

7

The plaintiff seeks to hold Sergeant Zepka and Captain Tritt liable for not intervening and stopping Ransbottom's alleged behavior. These defendants may be held liable if the plaintiff shows that they "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (citing Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir. 2001), and Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005)). The plaintiff alleges that Zepka and Tritt were Ransbottom's supervisors. He says that other incarcerated persons told them about Ransbottom's conduct with the plaintiff, yet they failed to intervene and stop her behavior. He alleges that these defendants could have stopped Ransbottom's unwanted conduct but failed to. The plaintiff's allegations are thin. He does not allege, for example, when or how Zepka and Tritt were "made aware" of Ransbottom's behaviors or how the other incarcerated persons knew about her alleged behavior. But construing the amended complaint in the light most favorable to the plaintiff for the purposes of screening, the court finds that he sufficiently alleges an Eighth Amendment claim against Zepka and Tritt for not intervening to stop Ransbottom's alleged conduct.

The plaintiff also alleges that Ransbottom's actions created a hostile work environment. The plaintiff does not suggest a basis for this claim, which the court could construe under Title VII, 42 U.S.C. §2000-e or similar federal statutes. But incarcerated persons are not "employees" under those statutes "'since their work relationships arise from their status as inmates, the primary

purpose of which is incarceration rather than employment.'" Jones v. Lockett, Case No. CIV.A 08-16, 2009 WL 2232812, at *5 (W.D. Pa. July 23, 2009) (quoting 1 Emp. Discrim. Coord. Analysis of Federal Law §18:31 (2009); and citing cases); see also Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991); Wilkerson v. Samuels, 524 F. App'x 776, 779 (3d Cir. 2013); Iheme v. Smith, 529 F. App'x 808, 809 (8th Cir. 2013); Tompkins v. Hepp, Case No. 08-CV-155-BBC, 2008 WL 2002663, at *2 (W.D. Wis. May 6, 2008). Because there is no basis for this claim, the court will not allow plaintiff to proceed on his allegations about a hostile working environment.

To the extent the plaintiff seeks to proceed on allegations about his lost prison job, he does not state a claim. The plaintiff has no protected interest in his prison job, and the loss of his job does not violate the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally, . . . deprivations of this kind simply are not punishments."); Olson v. Humphreys, Case No. 07-C-682, 2007 WL 2570231, at *4 (E.D. Wis. Aug. 30, 2007) (citing Harris v. Fleming, 839 F.2d 1232, 1237 n.5 (7th Cir. 1988); and Garza v. Miller, 688 F.2d 480, 485-86 (7th Cir. 1982)) ("[I]nmates have no property interest in receiving a job.").

The plaintiff seeks expungement of his disciplinary conviction or convictions. But the plaintiff cannot seek this relief in a federal lawsuit brought under §1983. The plaintiff's recourse to seek expungement of convictions is a petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v.

Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)). He may proceed in this §1983 case only on his request for damages.

### III. Motion to Appoint Counsel (Dkt. No. 5)

The plaintiff asks the court to appoint him counsel. Dkt. No. 5. He says he has no legal education, but that he "spoke to an outside investigator on this matter and the defendant may face charges." Id. at 1. He says he needs "legal assistance to make sure he don't [*sic*] say anything incriminating." Id. He also says that his claims are complex and "should be professionally argued." Id. He included letters that he sent to four lawyers or law firms requesting their assistance, none of whom agreed to represent him. Id. at 2; Dkt. No. 5-1. Notably, he says one attorney declined because he is "[a]lready involved in a case with Sarah Ransbottom." Dkt. No. 5 at 2.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does

the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at

491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first of these two inquiries. He says he contacted four lawyers or law firms requesting their assistance with his case, but all declined. The plaintiff provided the court with the letters he sent to the law firms but not their responses to him; nonetheless, the plaintiff has shown that he made a reasonable effort to obtain legal assistance without the court's help.

But the plaintiff has not satisfied the second inquiry. Although the plaintiff may be correct that a lawyer would be better equipped to handle this case than the plaintiff, that fact alone is not enough reason to recruit him counsel. That is because, as the court explained above, nearly all self-represented litigants would benefit from counsel's assistance, but there are simply too few lawyers willing and able to assist in these cases.

The plaintiff has not shown that he is one of those self-represented litigants most in need of an attorney's assistance to adequately present his case. The amended complaint clearly and articulately lays out the relevant facts and the plaintiff's legal claims. Although the plaintiff says his claims are complex, his allegations do not involve complex medical or technical issues that may require expert testimony. His claims rely largely or entirely on his version of the events, which he has shown that he remembers clearly and can recount in writing. Nothing in the amended complaint or the plaintiff's motion

suggests that he would be incapable of providing this information to the court or litigating his claims without the assistance of counsel.

Because the plaintiff's pleadings show he has a firm grasp of the alleged events and an understanding of his constitutional claims, at this time the court will deny without prejudice his motion to appoint counsel. As the case progresses, the legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. Should that occur, it may be appropriate for the court to recruit counsel to represent the plaintiff. But at this early stage of the proceedings, the court finds that the plaintiff does not require the assistance of counsel to adequately present his case. The plaintiff should be aware that the court will not appoint an attorney to assist the plaintiff in any "outside" case that arises in state court regarding Ransbottom's alleged conduct.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 5.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Sarah Ransbottom, Michael Zepka and Kyle Tritt. Under the

informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$326.71** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. It is the plaintiff's responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 17th day of October, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**